Okay, the last argument for today is docket number 23-1583, Wireless Discovery v. Coffee Meets Bagel. Mr. Sedley. Your Honor, I've never argued what is essentially the same appeal twice in a row. Might as well start with representative claims, because we're dealing with a different representative claim here. Well, Your Honor, the so-called representative claim in this one is the 267 Claim 10. And it lacks the elements that are present in the 352 and 397 patent claims that are issued. How so? Specifically, the 352 Claim 16 combines what's in Claim 1. That's the unique hardware identifier that is tracked in a profile in the database in the computing device that yields the positive result for Sally in the hypothetical I used a moment before. Whereas traditionally, without the invention, without the technology at issue, we'd produce a negative result for Sally. Those elements specifically recite that the device can be on or off. And the harder case is, of course, when the device is off. I guess the question is, you know, under our case law, for example, Berkheimer, if the plaintiff, the patent owner, doesn't really make any meaningful argument as to why other claims beyond the representative claim have something additional that's worthy of consideration under Section 101, then it's okay for the district court to just focus on one representative claim chosen by the defendants. And so, I think we've also said the mere identification of claim limitations and other claims that don't exist in representative claim by itself is not really enough of a meaningful argument. So, where in the briefing below was there something that we can look at that we can feel confident was enough of a meaningful argument that justified going beyond this one representative claim? Your Honor, if you look at the appendix pages roughly 194 to 197, there are objections made to the use of the representative claims. And there's a specific recitation in that briefing about this offline feature, meaning that the claims of the other patents include the ability to track and trace products that are the second device that is off. I don't see that on page 194. Your Honor, I'm reading from it. It says that claim one of the 267 patent requires... I'm sorry, where are you? Appendix page 194. Yes, where on that page? The paragraph that starts with while the claim sets. Okay. And then you'll see that there's discovery of devices that are off. Then if you go to the page under 397 patent, you'll see that there is... I'm sorry, where? I'm sorry, I'm moving too quickly. If you move to page 197 when the brief below moves from the general complaint about representative claims to go to each of the claims themselves, it says specifically, for example, the inventive concept that allows for members to have their... Are you at page 197 now? I am at appendix 197, which is internal page 6 in that brief. Right. And you are quoting something that begins... Okay, for example, found it. The inventive concept that allows for members to have their respective devices turned on or off while a search is conducted by a first user and still be discovered. Okay. That is the scenario that is addressed in the 352 claims that I referenced. That's claims 16 and 32. It is the scenario that's described in all of the 397 claims starting with claim one. And you can see that it's couched under each of those patents. So, in other words, when discussing the 397 below... Can I ask a question? Yes. I'm very confused. Is claim 10 of the 267, you're saying it's not representative, but I thought it actually had that limitation in it. It does not, Your Honor. Am I misunderstanding? It does not. The 267 includes the use of a unique hardware identifier, but it doesn't put it in a context in which we are reporting positive results. What about my final limitation? Page 883. Yeah, page 883. Liz, claim 10 of the 267 patent. I'm sorry, Your Honor. Which page? Page 883. Page 883? 8384. Page 83, please. This is the district court's opinion listing claim 10 of the 267 patent. And at the bottom, the last two limitations talks about turning on and off and using the computing device. I don't understand why... I'm sorry, Your Honor. What I was attempting to do with the 352 and the 397 claims is give the most robust combination of elements like one would do under BASCOM, which includes the unique hardware identifier, login credentials, and the ability to report positive results for offline devices. Claim 10 of the 267 patent does not explicitly reference the hardware identifiers. So we felt that the best combination was one that leveraged those hardware addresses specifically in the claim and not just in the patent specification. When that feature was called out in the context of the 267, the appellee said that that was a reference to the specification rather than the claims because that hardware identifier element doesn't appear in the claims. To follow up on Judge Stoll's question, the quote starting with, for example, the A197, I mean, that alleged inventive concept about being able to discover devices that happen to be turned off, I mean, that's, as I understand it, the last limitation of this representative claim 10 of the 267. But not leveraging the hardware address specifically, Your Honor. Do you want to talk about why that's inventive? I mean, why don't you talk about that? Why do you think this aspect of this claim, Claim 10 of the 267, let's just focus on that first. Why is that an inventive concept? Your Honor, I've already, I think, pivoted in the Court's language to the claims that combine the hardware identifier, the login credentials, and the ability to report positive results for offline devices. So on appeal now, are you not trying to save either the 875 patent or the 267 patent? Is that what you're saying? Because that's what I'm hearing. Your Honor, to be direct, there are other errors that justify this Court reversing even as to the 267 and the 875, namely the failure to consider a combination of elements. There's no discussion. Alice emphasizes that the Step 1 analysis should focus on a combination of elements if that's what's presented. The District Court doesn't do that at all. So that kind of error covers... I'm going to be honest with you. I don't feel like I got a direct answer whatsoever to the question I posed. So where I was going, Your Honor, is so there are other errors with respect to all four patents. But if we are pressed today, we are strongest on the 352 and the 397 because that's where the best combination of elements exists. So you asked me if we were attempting to save the 875 and the 267. The answer to that is yes, but for the general reasons I've described. I just think we're strongest on the 352 and the 397. It seems like your triple threat combination of identifier, authentication, and location data... It's not just location data. Well, I get it. I'm using shorthand.  But shorthand... Let me keep going, if you don't mind, is that you think they're somehow all integrated to each other. There's some kind of interrelationship between the three that creates an inventive concept. Is that right? It is, Your Honor, because... Now where in the claim, any claim, does it talk about this is how we're going to use the hardware identifier in the context of doing your location data limitation? If you look at Claim 1 of the 397 path, Your Honor, in the first element, we're talking about the creation of an association between an individual hardware device and a hardware identifier. Then we're... What if we look at that claim together? Okay. Then you can answer that question because I have the same concern. I'm having a hard time seeing how the claim actually emphasizes... Appendix page 187, Your Honor. Yeah. So we're talking about a server. So it's Claim 1 of the 397 path. That's what you want to talk about. Sure, Your Honor. The other...  I think you've already heard me on the other ones that are analogous, but let's just focus on this claim. They're not analogous, and you want to know why? Because you don't want to talk about them, and you want to talk about this one because you think it's your best bet because those other ones lack some of these claim limitations. But let's just focus on the merits. I think you've got five minutes left. Let's make sure you focus on the merits. Where is there an inventive concept in Claim 1 of the 397 patent? Your Honor, if you go to the element that starts with associate, it says associate each member profile with a unique hardware identifier or identification associated with the member device. Okay. Identify a unique ID of a second member. So that leverages the hardware addresses that we're talking about. And if you look at the last element, it says wherein the server permits discoverable members to have their respective devices turned on or off at a time of a search being conducted by the first user, wherein the server permits the discoverable members to have their respective devices unconnected to an internet connection at the time of the search. It's discovered based, I'm sorry, if you skim to the bottom of that element, and it is discoverable based on the latest static and dynamic location in proximity to the first user. So that integrates the hardware address, the profile that are laid out in the earlier elements, and then it puts them essentially in action in the final element. How do you know that? I mean, I understand you're saying that. Well, the elements that I'm describing are all in the claims. The specification describes that process, and it goes through the process of creating database records for each of the individual users, including specific hardware addresses. The figures highlight that kind of robust database record and leverages that and harnesses. Does the claim itself tell how the server permits discoverable members to have their devices turned on or off using the hardware ID? It says that they're configurable to report the static and dynamic locations. The only way that happens is the stepwise integration, to use the court's word, that I described earlier. It takes each profile, puts a hardware address in the profile, tracks that. If the device is off, it will report back based on the static address. If the device has been updated as to location, it will report a positive for Sally with respect to the dynamic addresses. Is it your contention that you are the first to have used this technology? Your Honor, that's really more of a novelty or obviousness question. I know, but it goes to step two, because step two says that your inventive concept can't be conventional. We are unaware. Again, we're at the 12B6 stage, the pleading stage, without any discovery having been conducted. In that context, all presumptions as to the novelty, utility, non-obviousness, would have to be in favor of the non-movement. The question is, is this patent owner, this inventor, the first one to decide to report out last known location of a phone, before the phone was turned off? Your Honor, we have those. Yes, Your Honor, that is the way the Patent Office looked at it, and it's the way we look at it. Well, you can't point me to anything that the Patent Office said. No, but Your Honor, it was argued. I'm asking you, is your inventor the first one that ever used the last known location of a phone? I don't know the answer to that, Your Honor. I do think that that's a prior art question. We're into your rebuttal. It's very deep. Let's hear from the other side. Counsel, could you start by answering that question, if you know anything about it, about whether this idea of reporting the last known address of a mobile phone before it's turned off, whether the patent itself, any of these specifications, say anything about whether that's conventional technology or not? Yes, Your Honor. Lance Wyatt, on behalf of Applebee's. Looking at the 875 specification, specifically A118, column 13, location data, and give us a second here. Yes, sorry. Okay. Column 13, what line? Line 60 to 61. Location tracking can be based on GPS and or Wi-Fi or other known protocols. Tracking location, I mean, the specification concedes, it can be any known protocol. I mean, this was being, this was conventional. And the court, you know, to go to the representative claim discussion that we've had today, the court found in this case, separate from the prior appeal, the court found one claim representative, that was claim 10 of the 267 patent. And the reason that the court found that it was representative is that there was no distinctive significance across all of the other claims. You know, the plaintiff down below pointed to the on-off functionality in other claims, and the court simply said that is conventional functionality practiced by generic technology. Do you want to give a tell us where that is in the court's opinion? I mean, and also, do you agree, though, that claim 10 of the 267 patent does talk about turning on and off, right? It does talk about that. It does not have language citing the unique hardware identifier. That was also mentioned by my colleague, but it does have the on-off functionality. Give me just one moment here. All right, A86, the last paragraph. The court is not convinced by Wyler's discovery's arguments that the other claims of the assertive patents have different concrete and technical elements and steps requiring separate patentability analysis. The unique hardware identifier and turning on and off functionality are just generic components used for their conventional purpose. Do we have a transcript of the oral argument in the JA? Yes, Your Honor. That is A219 through 232. Okay. Do we have something here that discusses this particular element? Your Honor, I don't recall that being the focus of the hearing below. Okay. I think really the emphasis on this unique hardware identifier to authenticate and the on-off functionality was really expounded upon on appeal. Yeah. When we're writing an opinion, assuming we write our opinion here, what would you contend would be the claims we need to make sure to address in that opinion? Your Honor, I think claim 10 of the 267 patent that the district court below found representative. I think that's the analysis that this court often takes on because when a claim is representative, the court looks to whether there are any distinctive significance found in the other claims, and that's exactly what the court below did here, and I think the court can also do so here with the representative claim. In other words, the court looks at claim 10 of the 267, says, okay, that's eligible or ineligible, and then determines whether there's something about those other claims that might make the outcome different? Yes, Your Honor. Okay. So I think in summary, I think this court need look no further than NETSOC. Can I ask you another question? Sure. What do you think is a mobile communication device? I was trying to figure out what this is when I looked at the specification. It's a little circular. It says, for example, a cell phone, but could it be a laptop? I mean, could it be any sort of device? Maybe you know the definition of the specifications that I missed, but is it limited to a cell phone? Or could it be anything that's mobile and communicates? Your Honor, that's a claim construction issue that didn't come up below. I think you are right that the specification isn't very clear on what could encompass a mobile device, and I think certainly there's an argument that a laptop, you know, given laptops back in 2007, you know, having mobile functionality could fall within the scope of the claim.  You make a good point that it wasn't argued below or it wasn't interpreted below too. So the other side seems to be making an argument of leveraging the unique hardware identifier along with using this location data that exists right before a phone gets turned off to be able to identify for an interested user where another mobile device is located thanks to the identifier and the last known location data before the phone gets turned off. Why would you say that's not something that would be regarded as a tech-based inventive concept? So I think where the issue lies there, and where a lot of these 101 cases tend to fall on one side or the other, is specificity in the claims. And here there really is no specificity as to how the on-off functionality works. It merely states the idea that, you know, a user can still be connected with another user even if that second user's phone is on or off. Are they actually connected, or is it more that you could discover the general location of an unconnected phone based on the last known location of that now disconnected phone? I apologize, Your Honor. I think I might have gotten a little bit ahead of myself in the process of the claims of how users are introduced to one another. I think the discovery process would be the first process in that step of connecting people together. Right, but as I understand the claim, that's what the claim is simply calling for. Where might other phones exist in the immediate location? And certainly we'll be able to get a hold of the location of phones that are on. And as for phones that are off, that were turned off in the immediate location, that will also be reported out, right? Right, Your Honor. That's what the claim is calling for. Right, and I think there are some additional steps in some of the other claims where a user can send an invitation to another user, where they can then be connected to communicate through other means. But I think certainly the discovery step is the primary step in eventually connecting users. But I think the problem with these claims is that there is no specificity as to how any of this is done. Even if on-off functionality was purportedly solving a technological problem, there's no specificity in the claims to show how technology is being improved here. They're merely stating the idea that, oh, a user can still be discovered even if their phone is off. How? Claims don't tell us. Does the specification say how, other than it saying that it's using conventional location technology? I think that's really all it says, is that it is the conventional location technology that's stored in the database. So when a user is looking who is discoverable, it can pull that information from the database, which is, I would say, conventional functionality. In the server. And the server, what about the server tracking the cell phones or mobile communication devices by a hardware identifier, which I think the spec says that's a Bluetooth, at least in some embodiments, maybe a Bluetooth number or something. Is there anything that talks about that being conventional? Yes, Your Honor. So A117, column 12. Lines 7 through 17. It says here, the requesting user's resident CSA, upon receiving the three respective Bluetooth device ID addresses, i.e. address for device 1, 2, and 3, the address may be broadly construed to include any unique identifier, such as Bluetooth device address or unique identifier selected from a Wi-Fi address or main component address or an IMEI. So I think the unique hardware identifier is conventional, and I think the specification is clear on that. So opposing counsel was making a number of arguments today, which I described as a pivot a little bit with respect to, I'm going to say, the 397 and the 352 patents. Do you have any other arguments that you want to make focused on those particular patents? Nothing related specifically to those other two patents. I think the limitations that were called out in those patents were discussed in the blue brief, not necessarily mentioning the 397 or 352 by name, but I think it was this kind of combination argument of the unique device identifier with the on-off functionality. And I think the reason my colleague pointed to a claim in one of those patents is because it has both of those limitations, whereas the 267 only has the on-off functionality, doesn't have the unique device identifier. But again, I think the district court correctly found claim 10 of the 267 representative despite those additional limitations in those other two patents. What do we review that for? De novo or abuse of discretion? I believe the 101 here is a de novo review. Representative claim of selection. I think that would also be a de novo review. If there are no further questions. Mr. White, thank you. Thank you. I'll be brief, Your Honors. The district court erred when it found that the use of the unique hardware identifiers and the ability to report positive results for offline devices were generic components being used for their conventional purpose. The conventional purpose of turning a device on or off is to power it on or off. The conventional reason for using a hardware identifier is to allow that device to communicate over the network. Both of those things are being used in atypical ways here. What is the evidence of that? I feel like what you're saying here is attorney argument more than anything else. Do you have any place in the patent itself you want to emphasize that? That it talks about identifying devices that are off? The unique hardware identifier is not used in this way. It's not used to locate, for example, the cell phone to see whether it's on or off or find its last location. No, Your Honor. The description in the patents is the fact that there is a unique hardware identifier that is then stored in a database record which is then used. Let me try again. Where in the statute does it describe what you're relying on as a eureka moment? Something that gives me a sense of, wow, we're using this ID to associate with a user profile. That's an interesting twist. And the same thing with picking up the last known location data that is being reported out by a GPS. The use of static and dynamic location data, Your Honor? That is being discussed in the 397, the user profile discussion in column 18. Okay. Could you give us the page number? Appendix 184. 184, column what? 184, column 18, starting at roughly line 7. It starts with the proposition that a user profile is stored and updated. The detection and notification module may continuously monitor the locations of the devices and that's certainly doing the monitoring piece. Okay. Okay. In the 352 patent, Your Honor, at column 16, which is appendix page 140, there is a discussion of the embodiment where the unique hardware identifier is being combined with the notion of static and dynamic locations that starting at roughly line 42. What column? 16. Okay. I think we have your argument. Thank you very much. The case is submitted.